

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-28-1997

# Robinson v. Dalton

Precedential or Non-Precedential:

Docket 96-1212

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Robinson v. Dalton" (1997). *1997 Decisions.* Paper 49.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/49

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 96-1212

DENNIS ROBINSON,
Appellant

v.

JOHN H. DALTON, SECRETARY TO
UNITED STATES DEPARTMENT OF THE NAVY

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 95-cv-04043)

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 4, 1996

Before:  SLOVITER, Chief Judge
McKEE and ROSENN, Circuit Judges

(Opinion Filed  February 28, 1997)

Mark S. Scheffer
Larry Pitt & Associates
Philadelphia, PA  19103

        Counsel for Appellant

David R. Hoffman
Office of United States Attorney
Philadelphia, PA  19106

        Counsel for Appellee

SLOVITER, Chief Judge.

Plaintiff, who filed a Title VII action alleging that he was fired from the Navy in retaliation for his previous charges of racial discrimination, appeals from the district court's dismissal for lack of subject matter jurisdiction. On appeal, we must examine both the procedure for the district courts to use in deciding whether a plaintiff failed to exhaust administrative remedies and the type of agency action that warrants application of equitable tolling. We also consider when a previously filed administrative complaint encompasses a charge based on a subsequent discharge.

## I.

### Facts and Procedural History

During 1989, Dennis Robinson, an employee at the Philadelphia Naval Shipyard, filed three separate complaints with the Navy's Equal Employment Opportunity ("EEO") Office alleging racial discrimination and retaliation. From the information available to us it appears that at different times during the year (March 14, March 29, and June 26), Robinson filed complaints alleging that the Navy 1) denied his sick leave from August 27 – October 26, 1988 and promoted a white employee to permanent general foreman; 2) placed him on an unauthorized leave status on January 25, 27, 30 and, as well as February 1 and 3, 1989; and 3) issued him an indebtedness letter of $9,800 for disapproved sick leave and cited him for creating an asbestos hazard. These

complaints were consolidated and, following administrative proceedings and investigation, resulted in a finding by the EEOC of no discrimination by the Department of the Navy. Robinson's request for reconsideration was denied and the EEO issued a letter on May 4, 1995 informing him that he had no further rights of administrative appeal but could file a civil action in federal district court within 90 days.

In addition to the absences referred to in his EEO complaints, Robinson was absent from his job without authorization for a long period beginning on November 27, 1989. He was instructed on January 5, 1990 to contact his employee relation specialist to explain the reasons for his prolonged absence and was told that his failure to do so by January 12, 1990 would result in his absence being unauthorized and that the Navy would take action to terminate his employment at the shipyard. Robinson failed to comply with the Navy's directions.

On January 26, 1990 the Navy wrote to Robinson that it proposed to remove him from his employment due to excessive unauthorized absences and creating an asbestos hazard. Robinson responded with a letter from his doctor but the Navy determined that this letter did not adequately justify Robinson's absence and it requested additional information. Robinson never provided any further information. The Navy then terminated his employment on April 5, 1990.

3

Robinson brought this suit in district court claiming that he was fired in retaliation for the previous charges of racial discrimination. He invoked jurisdiction based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[1]

Although Robinson's complaint alleges that he had filed a complaint with the Navy's EEO counselor and exhausted all of his administrative prerequisites, App. at 15, the Navy moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim or Rule 56 for summary judgment, asserting that Robinson had failed to exhaust his administrative remedies. The district court converted the motion into a Rule 12(b)(1) motion and then conducted a three-day evidentiary hearing to determine whether it had jurisdiction over the claim.

Among the evidence relevant to the district court's ultimate ruling was Robinson's testimony that he talked to an EEO counselor over the telephone, who he thought was Shirley Brown, who told him that he did not have to file a complaint, App. at 89, and his affidavit stating that the counselor told him that since he had other claims of retaliation pending, he did not have to file another separate complaint, App. at 50. In response, the Navy provided a computer printout from the Navy EEO office which showed that Robinson had first contacted an EEO officer on October 3, 1990, six months after he was terminated. Karl Pusch, an EEO counselor, testified that he remembered completing an EEO

---

1. Robinson's complaint alluded to a claim of disability under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., but this claim was dismissed along with the others without discussion and Robinson's brief fails to include any argument related thereto.

4

intake form on that day.  A mail record shows that the EEO office sent Robinson a Notice of Final Interview on October 15, 1990. Furthermore, Brown and Pusch both testified that they would never have advised a complainant not to file a complaint.

The district court dismissed Robinson's complaint stating that

we need not decide whether Robinson was not telling the truth in his affidavit or whether he simply misrecollects the events of 1990, since it is sufficient merely to conclude that he has not met his burden of showing either that he timely contacted an EEO counselor within thirty days of his termination or that an EEO counselor misled him into failing to follow the proper procedures.

App. at 27.  Robinson filed a timely appeal.

## II.

## Discussion

### A.

We do not reach on this appeal the merits of Robinson's Title VII claim.  Rather, we limit our consideration to the procedure used by the district court in dismissing the action under Rule 12(b)(1), the sufficiency of Robinson's contention of equitable estoppel, and the effective scope to be given a pending EEOC complaint.

It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief.  McKart v. United States, 395 U.S. 185, 193 (1969).  We have explained that the purposes of the exhaustion requirement are to promote administrative efficiency, "respect[] executive autonomy by

5

allowing an agency the opportunity to correct its own errors," provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record.  Heywood v. Cruzan Motors, Inc., 792 F.2d 367, 370 (3d Cir. 1986).

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-16, establishes the exclusive remedy for federal employees who allege discrimination in the workplace.  Under regulations promulgated by the EEOC in effect in 1990, an aggrieved federal employee was required to initiate contact with an agency counselor within 30 days of "the effective date of an alleged discriminatory personnel action, or the date that the aggrieved person knew or reasonably should have known of the discriminatory event or personnel action." 29 C.F.R. § 1613.214(a)(1)(i) (1990).  A formal EEOC complaint must be filed "within 15 calendar days after the date of receipt of the notice of the right to file a complaint."  29 C.F.R. § 1613.214(a)(1)(ii).  Finally, in order to bring an action in district court the employee must do so either within 30 days of receipt of notice of final agency action or within 180 days from the date of filing the complaint if the agency has not reached a decision.  29 C.F.R. § 1613.281 (1990).  Thus, exhaustion requires both consultation with an agency counselor and filing a formal EEOC complaint within the required times.

In its motion to dismiss, the Navy argued that Robinson had waited over six months after he was terminated before seeking EEO counseling and then failed to file a formal EEOC complaint

6

after his final counseling session. Robinson's response was twofold: first, that he did not have to exhaust his administrative remedies because his termination was fairly included within the scope of his pending EEOC complaints and second, that he did contact an EEO Counselor within 30 days of his termination and was told that he did not have to file an additional charge of retaliation. He argued that because he was misled by the EEO Counselor, the Navy should be estopped from challenging his failure to exhaust or timely file. The district court granted the Navy's motion, and dismissed.

On appeal, Robinson argues that the district court erred in failing to treat the Navy's motion to dismiss for lack of jurisdiction as a motion for summary judgment once the court looked beyond the face of the pleadings, and that summary judgment was precluded because there were disputed issues of material fact.

Ordinarily, if "matters outside the pleadings are presented to . . . the court, the motion shall be treated as one for summary judgment." Fed. R. Civ. Pro. 12(c). On the other hand, when there is a factual question about whether a court has jurisdiction, the trial court may examine facts outside the pleadings and thus "the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case." Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). We have explained that in such a circumstance, a trial court "is free to

7

weigh the evidence and satisfy itself as to the existence of its power to hear the case." Intern. Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982). Unlike the procedure governing summary judgment, under a Rule 12(b)(1) motion to dismiss "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen, 549 F.2d at 891.

Although the district court in this case described its preliminary evaluation as "jurisdictional," this court has previously determined that questions of whether a plaintiff has timely exhausted the administrative remedies in Title VII actions "are in the nature of statutes of limitation. They do not affect the district court's subject matter jurisdiction." Hornsby v. United States Postal Service, 787 F.2d 87, 89 (3d Cir. 1986)(citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 392-98)(1982)). Moreover, in Title VII cases courts are permitted in certain limited circumstances to equitably toll filing requirements, even if there has been a complete failure to file, which necessarily precludes characterizing such requirements as "jurisdictional." See Bowen v. City of New York, 476 U.S. 467, 482 (1986)(exhaustion excused for same reasons as those allowing tolling of the statute of limitations); see also Waiters v. Parsons, 729 F.2d 233, 236 (3d Cir. 1984)(failure to file EEOC complaint not jurisdictional and district court should consider application of waiver, estoppel or tolling).

8

It follows that the Navy's motion to dismiss should have been treated under Rule 12(b)(6), the Rule invoked by the Navy, rather than converted into a Rule 12(b)(1) motion for lack of jurisdiction, as the district court did. Timeliness of exhaustion requirements are best resolved under Rule 12(b)(6) covering motions to dismiss for failure to state a claim. As we explained in Hornsby, "[t]he causes of action created by Title VII do not arise simply by virtue of the events of discrimination which that title prohibits. A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC [] for conciliation or resolution." 787 F.2d at 90. A district court may rule on a Rule 12(b)(1) motion when on the face of the pleadings it is clear that administrative remedies have not been exhausted, but this rule is "inapplicable to the resolution of disputed issues of material fact with respect to the applicability of statutes of limitations." Id. at 89.

The Court of Appeals for the Seventh Circuit reached the same conclusion on facts quite similar to those before this court. In Rennie v. Garett III, 896 F.2d 1057 (7th Cir. 1990), a former Navy employee brought a Title VII action alleging sex discrimination and retaliation. The district court dismissed her complaint under Rule 12(b)(1) for failure to exhaust, after making a credibility determination that she had not met with an EEO counselor and discussed her retaliation claims. Id. at 1058–59. The Court of Appeals cited and followed our decision in

9

Hornsby, overturned its own court precedent, and reversed the dismissal, holding that timely exhaustion of administrative remedies "should be construed as a statute of limitations and not as a jurisdictional prerequisite." Id. at 1062. It directed the district court on remand to make a factual determination about plaintiff's possible equitable tolling arguments without the Rule 12(b)(1) burdens of "summary dismissals." Id. at 1062–63.

We therefore agree with Robinson that the district court's inquiry should have been made pursuant to a Rule 12(b)(6) motion for failure to state a claim. Once Robinson pled the applicability of the equitable tolling doctrine which went beyond the face of the pleadings, the district court should have treated the issue of equitable tolling in a manner consistent with Rule 56 for summary judgment. See Hornsby, 787 F.2d at 89; Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1391–92 (3d Cir. 1994).

**B.**

Under the summary judgment standard we view the evidence in the light most favorable to Robinson and take all of his allegations as true. However, we will not reverse the district court's dismissal if, "apply[ing] the same test the district court should have utilized initially," plaintiff is not entitled as a matter of law to equitable tolling. Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1413 (3d Cir.), cert. denied, 502 U.S. 941 (1991).

In Oshiver, this court explained that equitable tolling of statutes of limitation "may be appropriate: (1) where the

10

defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum."  38 F.3d at 1387.

Robinson neither claims that the Navy actively misled him nor that he filed this action in the wrong forum.  Thus, he would be entitled to equitable tolling only if his allegation that he was misled by an EEO counselor fit within the second category where a plaintiff "in some extraordinary way has been prevented from asserting his or her rights."

The applicable EEOC regulation provides that the agency "shall extend the time limits [for filing a complaint] when the complainant shows that he/she was not notified of the time limits and was not otherwise aware of them, was prevented by circumstances beyond the complainant's control from submitting the matter within the time limits; or for other reasons considered sufficient by the agency."  29 C.F.R. § 1613.214(a)(4) (1990).

Robinson does not contend that he was unaware of the procedural requirements and the need to file a complaint within 30 days.  At most he alleges that he contacted an EEO counselor by telephone within the 30 day requirement and was advised that in light of his pending complaints he did not have to file an additional complaint for retaliatory discharge.  Accepting as true Robinson's version of the events, and disregarding the EEOC records offered by the Navy which show that Robinson appeared for

11

his initial counseling session six months after he was discharged, we hold that one phone conversation with an EEO counselor does not rise to the level of being prevented in an "extraordinary way" by the EEOC from asserting his rights. Nor, using the language of the EEOC regulation, was he "prevented" by circumstances beyond his control from timely submitting the matter.

These facts are unlike those in Albano v. Schering-Plough Corp., 912 F.2d 384 (9th Cir. 1990), cert. denied, 498 U.S. 1085 (1991), where the EEOC refused to amend plaintiff's timely complaint to include an allegation of discriminatory discharge. In that case, the court held that equitable tolling was justified where in refusing the amendment the EEOC failed to follow its own rules, the plaintiff had at least 14 conversations with the EEOC attempting to amend, and on at least three occasions the agency's employee assured plaintiff that his new claim was encompassed within the claim being investigated.

Nor is Robinson in the position of the plaintiff in Steffen v. Meridian Life Ins. Co., 859 F.2d 534 (7th Cir. 1988), who had filled out an intake questionnaire and was advised by an EEOC officer that this was sufficient to preserve his ADEA claim. Indeed, in Steffen the EEOC appeared as amicus curiae arguing that filling out an intake questionnaire should be enough to satisfy the filing requirement, thereby further justifying equitable estoppel.

Running throughout the equitable estoppel cases is the

obligation of the plaintiff to exercise due diligence to preserve his or her claim.  The Supreme Court has explained that "[f]ederal courts have typically extended equitable relief only sparingly . . . .  We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."  Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990).  While a plaintiff may justifiably rely on written communications from the EEOC, which was held to be enough to warrant equitable estoppel in Jennings v. American Postal Workers Union, 672 F.2d 712, 714–15 (8th Cir. 1982) (letter from EEOC that the Civil Service Commission, not it, had jurisdiction), Robinson offers nothing more than one alleged phone conversation.  Cf. Dartt v. Shell Oil Co., 539 F.2d 1256, 1261 (10th Cir. 1976)(holding that equitable tolling should be allowed where agency neglected to inform plaintiff of filing deadlines despite numerous phone conversations, at least once a month, to check on the progress of the investigation), aff'd by an equally divided Court, 434 U.S. 99 (1977) (per curiam).

Robinson was not inexperienced in the procedures required to maintain a discrimination complaint, having already filed three such complaints.  See Kocian v. Getty Refining & Marketing Co., 707 F.2d 748, 755 (3d Cir.), cert. denied 464 U.S. 852 (1983).  His failure to confirm the advice allegedly received on the telephone by written communication or even by another telephone communication shows an absence of the due diligence

13

which the Supreme Court has regarded as a condition for equitable tolling.  See Irwin, 448 U.S. at 96.

Furthermore, should a plaintiff in Robinson's position be able to circumvent exhaustion requirements by simply asserting s/he was given erroneous telephone advice from an agency employee, equitable tolling would be converted from a remedy available only sparingly and in extraordinary situations into one that can be readily invoked by those who have missed carefully drawn deadlines.  We cannot extend the doctrine that far.  Thus we agree with the district court that Robinson "ha[d] not met his burden of showing . . . that an EEO counselor had misled him into failing to follow the proper procedures."  App. at 27.

## C.

Finally, we consider Robinson's alternative argument that he did not have to file a separate EEOC complaint alleging retaliatory discharge in light of his already pending EEOC complaints.  Robinson relied for this argument on our decision in Waiters v. Parsons, 729 F.2d 233 (3d Cir. 1984)(per curiam), a case in which we held it was not necessary for the plaintiff to have filed an additional complaint when she was discharged. Because such a holding is fact specific, we review that decision in some detail.

In Waiters we held that the mere fact that a complainant has pending a complaint of discrimination does not mean that the requirements of administrative exhaustion are necessarily excused.  Such a rule, whether express or applied in practice, would eviscerate the remedial purposes of the

14

exhaustion requirement.  This court expressly declined to adopt the per se rule it attributed to the Fifth Circuit.  We described the ruling that we rejected as one that "held that all claims of 'retaliation' against a discrimination victim based on the filing of an EEOC complaint are 'ancillary' to the original complaint, and that therefore no further EEOC complaint need be filed. Gupta [v. East Texas State University, 654 F.2d 411, 413-14 (5th Cir. 1981]."  Waiters, 729 F.2d at 237 n.10.

Although other courts of appeals seem to have adopted a broad per se rule, stating that any complaint of retaliation occurring during the time when prior EEOC complaints are pending necessarily falls within the scope of those complaints, see, e.g., Ingels v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir. 1994), Gupta, 654 F.2d at 413-14, Kirkland v. Buffalo Bd. of Educ., 622 F.2d 1066, 1066-68 (2d Cir. 1980) (per curiam), Nealon v. Stone, 958 F.2d 584, 584-90 (4th Cir. 1992), Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 167-69 (11th Cir. 1988), while some others have limited this per se rule to require that the prior EEOC complaint specifically allege retaliatory conduct, see McKenzie v. Illinois Dep't. of Transp., 92 F.3d 473, 483 (7th Cir. 1996), Ang v. Procter & Gamble Co., 932 F.2d 540, 547 (6th Cir. 1991), our court in Waiters rejected any per se rule.

Notwithstanding the array of seemingly contrary authority, as a panel we are not free to diverge from our court's written precedent.  See Third Circuit's Internal Operating Procedures, Ch. 9.1.  We thus follow the approach of our own case law, which has been to examine carefully the prior pending EEOC

15

complaint and the unexhausted claim on a case-by-case basis before determining that a second complaint need not have been filed.

In Waiters, the plaintiff, a female social worker at the Veterans Administration Medical Center in Coatesville, Pennsylvania (VAMC), had filed an informal complaint with the EEOC alleging sex discrimination in the promotion of a male employee but withdrew that complaint after mediation resulted in her being given a position in a new program. The next year, however, she filed a formal complaint with the EEOC alleging continuing discrimination in retaliation for having made the earlier informal complaint.

After an EEOC investigation, the district director found that Waiters was subjected to harassment following the informal EEOC complaint and concluded that Waiters was discriminated against because she opposed practices unlawful under Title VII. Waiters, 729 F.2d at 235 n.2. Waiters was discharged the following year for a number of miscellaneous reasons. On Waiters' appeal, the Merit Systems Protection Board reduced the sanction to a 60-day suspension, but Waiters, continuing to press her claim to 60 days' back pay and counsel fees, filed suit.

The district court dismissed her complaint for failure to exhaust her administrative remedies. On appeal, this court reversed, explaining that "[a] victim of discrimination is not required to exhaust administrative remedies with respect to a claim concerning an incident which falls within the scope of a

prior EEOC complaint or the investigation which arose out of it, provided that the victim can still bring suit on the earlier complaint." Waiters, 729 F.2d at 235. We held that a separate EEOC filing alleging retaliatory discharge was not necessary because the EEOC investigation went beyond the specific allegations in the formal complaint and looked at the employer's entire conduct. Id. The EEOC district director had concluded that "a pattern of events that occurred after the filing of the informal complaint demonstrated that officials at VAMC 'retaliated' against appellant for filing the informal complaint." Id. at 238. Because Waiters alleged "that her discharge was the product of this same retaliatory intent," we concluded that although the officials and acts were different, "the core grievance – retaliation – is the same and, at all events, it is clear that the allegations of the appellant's complaint fall within the scope of the district director's investigation of the charges contained in the 1979 formal complaint." Id. at 238.

Thus, in Waiters we identified two circumstances in which events subsequent to a filed complaint may be considered as fairly encompassed within that complaint, either where the incident (1) falls within the scope of a prior EEOC complaint, or (2) falls within the scope of the EEOC "investigation which arose out of it." Id. at 235. We decided that the EEOC investigation, which apparently had been broadened by the EEOC, encompassed the underlying conduct leading to the ultimate discharge, and that

there was nothing to be served by requiring Waiters to file a second complaint.  Id.

We compare Waiters' situation with Robinson's administrative claims and investigation.  We base our analysis on the proceedings described in the EEOC's Final Decision dated June 2, 1993 and its earlier denial of his request to reopen, dated March 18, 1991, as we have little else of relevance before us.  It appears that in each of Robinson's three complaints, one complaining of the disapproval of his sick leave from August 27 through October 26, 1988, and the promotion of a white employee to the new permanent position of Insulator General Foreman, another complaining that he had been carried in an unauthorized leave status in late January and early February 1989, and the third complaining of the issuance of an indebtedness letter for disapproved sick leave and for creating an asbestos hazard, Robinson also complained of retaliation.

Following a finding of no discrimination, Robinson filed a Request to Reopen with the EEOC.  Although the EEOC denied the request to reopen because it did not contain any new and material evidence, the EEOC did vacate the decision and remand for a supplemental investigation of Robinson's formal complaint of race, color, and reprisal discrimination.  At the same time, the EEOC noted "that the complaint and appellant's prior complaints are interrelated in that they all raise issues related to sick leave usage during a particular period and they all appear to involve the same agency decision-makers."  It concluded that "it would appear to be in the interest of

18

efficient and prompt complaint processing to investigate all three complaints concurrently."  It continued: "Finally, we note that none of appellant's three complaints challenge his demotion or termination or any other action appealable to the MSPB."  The EEOC refused to investigate the charge of retaliatory discharge because a complaint had not been timely filed.

The district court determined that Robinson's three timely filed complaints, which the court viewed as concerning whether the specific absences were authorized or not, were not "related" to the subsequent discharge because of Robinson's intervening prolonged absence.  The court treated the termination as in response to this later absence and therefore unrelated to the earlier events.  From the meager record before us, we are unable to determine whether that was a permissible conclusion at this preliminary stage.  It is apparent, however, that the district court failed to discuss the ground which was the basis of our decision in Waiters that the complainant's subsequent discharge fell within the earlier complaints – i.e. the scope of the EEOC's investigation.

Robinson is at a disadvantage here because the EEOC expressly declined to include his later discharge in its investigation.  In Ostapowicz v. Johnson Bronze Co., we explained that "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the Commission."  541 F.2d 394,

19

398-99 (3d Cir. 1976) (citations omitted).  Thereafter, we held in Hicks v. ABT Associates, Inc., 572 F.2d 960, 965 (3d Cir. 1978), that if the EEOC investigation is too narrow, a plaintiff should not be barred from raising additional claims in district court.

In Hicks, the plaintiff alleged racial discrimination in his termination and filed a timely charge with the EEOC.  Id. at 962.  The EEOC found that there was no reasonable cause to believe that Hicks was discriminated against based on race.  Id. at 963.  Hicks then filed suit in district court alleging race and sex discrimination.  Id.  The district court dismissed the charge of sex discrimination because that charge had not been filed with the EEOC.  Id.  On appeal we remanded, explaining that even though the EEOC had limited its investigation to the charge of race discrimination, the district court must evaluate the reasonableness of that investigation.  Id. at 965.

We are in a similar position in this case in that the EEOC declined to investigate Robinson's allegations of retaliatory discharge because a separate complaint had not been filed with the EEOC, and the district court did not evaluate the reasonableness of the decision not to investigate.  Thus we find it appropriate to remand this case to the district court.

In the first place, we are hampered by the absence in the record of the actual complaints and have been obliged to rely on the summaries of those complaints in the EEOC's rulings.  In the second place, we note with some puzzlement that the reasons given by the Navy for its discharge appear to include some of the

20

same incidents referred to by Robinson in his three timely complaints, i.e. excessive leave and creating an asbestos hazard. Therefore, we are unable to understand why the EEOC declined to investigate Robinson's discharge. We believe that the district court will be in a better position to collect the relevant material, question the parties on the implications, and decide in the first instance whether the EEOC's limited investigation was reasonable under the circumstances.

Factors the district court may consider in making this determination include 1) whether the previous three complaints alleged the same retaliatory intent inherent in the retaliatory discharge claim, Waiters, 729 F.2d at 238; 2) whether the subject of these previous complaints were used as a basis for the Navy's decision to terminate Robinson; and 3) whether the EEOC should have been put on notice of Robinson's claim of retaliatory discharge and therefore investigated that claim, Hicks, 572 F.2d at 966. In light of our precedent, the court may also want to reexamine whether there is enough overlapping in Robinson's subsequent allegations with the earlier complaints that this discharge complaint fairly falls within the scope of the earlier complaints.

## III.

For the reasons set forth, we will vacate the order dismissing this action and remand for further proceedings consistent with this opinion.

_____

TO THE CLERK:

21

Please file the foregoing opinion.

_____
Chief Judge